Dear Ms. Kattengill:
On behalf of the St. Bernard Parish Council, you have requested an opinion of this office regarding a salary increase recently taken by the Parish President. According to your correspondence, the St. Bernard Parish President, Mr. Charles Ponstein, increased his annual salary of $45,000 to $70,000. This action was apparently taken sometime in June, and was made retroactive to January 10, 2000, the date of the commencement of the Mr. Ponstein's second consecutive term of office as Parish President.
According to your correspondence, the Saint Bernard Parish Home Rule Charter, at Article III, Executive Branch, Section 3-04(A), Compensation, pertinently provides:
 "The salary of the first president elected under this charter shall be $45,000.00 per annum. The council may by ordinance increase or decrease the salary for the office of parish president provided that such an increase or decrease shall not become effective during any term of the current parish president at the time of the adoption of such an ordinance."
On December 15, 1998, you advise that the St. Bernard Council adopted Ordinance SBPC #403-12-98, which became effective on January 31, 1999. That ordinance amended the St. Bernard Parish Code of Ordinances to add section 2-6, entitled Parish President's Salary, which section pertinently provides:
 "(a) That the salary of the Parish President shall be increased to 70,000 per annum.
 (b) Such an increase shall not become effective during any term of the current parish president at the time of the adoption of this ordinance."
Specifically, the Council requests that this office address the following three questions:
 (1) "Do the provisions of the St. Bernard Parish Home Rule Charter bind upon Mr. Ponstein, the second parish president to serve under the charter, currently serving out his second term of office since January 10, 2000?"
 (2) "Is Mr. Ponstein's unilateral action raising his salary in conflict with Ordinance SBPC #403-12-98, adopted December 15, 1998 as Mr. Ponstein was the parish president at the time the ordinance was adopted as is evident by his signature on the ordinance?"
 (3) "Can a governing authority retroactively pay an elected public official under the provisions of State Law?"
In response to your first question, we interpret the language of the St. Bernard Parish Home Rule Charter and ordinance as cited above to mean that no pay raise for the parish president may be effective during the current term in which the pay raise is enacted. However, a pay raise may be effective prospectively for the new term for which the parish president is re-elected. We do not believe the drafters of the home rule charter intended to permanently freeze the compensation of a president who could be re-elected for a number of terms. In such a case, a president would never be eligible for a pay increase as long as he was in office.
Regarding the second issue, the president's action was not unilateral but was consistent with and authorized by the parish ordinance as cited above. Obviously, the council intended the parish president's compensation to be increased for the new term beginning January of 2000 regardless if the then (in 1998) parish president was re-elected or whether a new successor became parish president. The language of the ordinance tracks the home rule charter provisions and our interpretation, in answer to your first question, likewise applies to the ordinance.
Thirdly, looking at the facts presented, the council's ordinance became effective and operative with the beginning of the new term in January of 2000. Thus, there was no retroactivity involved and the parish president was merely collecting the salary due to him from the beginning of the new term.
We trust the foregoing sufficiently addresses your concerns. Please do not hesitate to contact us if we can be of assistance to you or the Parish of St. Bernard in the future.
Very truly yours,
 RICHARD P. IEYOUB Attorney General
RPI/jrw